IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs February 25, 2020

**STATE OF TENNESSEE v. AARON FRANK BRITTON**

**Appeal from the Criminal Court for Knox County**
**No. 114556     Steve W. Sword, Judge**

_____

**No. E2019-01104-CCA-R3-CD**
_____

The defendant, Aaron Frank Britton, appeals his Knox County Criminal Court guilty-pleaded conviction of aggravated assault, arguing that the trial court erred by imposing a fully incarcerative sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and, ROBERT H. MONTGOMERY, JR., JJ., joined.

Michael A. Graves, Knoxville, Tennessee, for the appellant, Aaron Frank Britton.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall Kilby, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On January 8, 2019, the defendant entered a plea of guilty to the single count of aggravated assault charged by information on that same day. Pursuant to a plea agreement with the State, the defendant received an agreed sentence of six years, with the manner of service of the sentence to be determined by the trial court. The State summarized the facts of the case:

> [O]n October 25, 2018, . . . Knoxville Police Department officers would testify that they observed [the defendant] pull into a drive-through line at the McDonald's located at 2812 Magnolia Avenue here in Knox County. [The

defendant] was known to these officers to have outstanding warrants.

Officers attempted to approach him to take him into custody on these warrants. Officers would testify that . . . once they did so, [the defendant], when he observed them, accelerated his vehicle across the parking lot at McDonald's and struck a police vehicle occupied by Officer David Lee of the Knoxville Police Department, causing him to fear serious imminent bodily injury . . . .

Neither party presented any evidence at the May 23, 2019 sentencing hearing. The defendant acknowledged that he had been rejected by several alternative sentencing programs and that he had failed to appear for the original setting of his sentencing hearing. He blamed his estranged wife, who was also on probation, for his failure to be accepted into those programs, saying that "everything she did was planned" to prevent his being granted probation. He also observed that two programs "didn't want to take me because they went back on my history. . . . So, really, I'm getting judged off something I did in the past."

An assessment from the Tennessee Department of Correction Day Reporting Center ("DRC"), which was exhibited to the hearing, reflected that the defendant was rejected by that program because the defendant's wife was then enrolled in the program. It also established that DRC would consider reassessing the defendant should his wife be released from the program. That report also indicated that the defendant, by his own admission, had used marijuana "a few days prior to our interview" in March 2019.

An assessment from the Knox County Sheriff's Office Community Alternatives to Prison Program ("CAPP"), which was also exhibited to the hearing, reflected that the defendant "may not be technically eligible for placement at CAPP due to the violent nature of the offense." The assessment noted that the defendant "has a criminal history that includes arrests for multiple assaults, robbery and has had his parole revoked on at least three occasions." On these bases, "CAPP has determined that [the defendant] is not appropriate for placement on CAPP."

The presentence report, also exhibited to the hearing, established that the 30-year-old defendant's criminal history began when he was 16 years old and spanned his entire adult life. He had prior convictions for assault and drug possession, among other things. In addition to his record of criminal convictions, the defendant had a record of revocations of sentences involving release into the community. The risk needs

assessment showed that the defendant had "a score of high for violence."

The court found that the defendant had a long history of criminal convictions and a failure to abide by sentences involving release into the community. The court observed:

> And so what I'm faced with is, I've got somebody who's pled guilty to aggravated assault, fleeing from the police in a vehicle, who has assaultive convictions in the past. You've been to prison before. You've had your parole revoked before. You've had probation revoked before. You came back as a high risk on your presentence investigation because of those violent convictions in the past. And that's why Enhanced and CAPP said no. And then you don't report for the sentencing hearing for whatever reason. It may be issues with your wife, but then you pick up this new aggravated assault.
>
> And so you've really sort of put yourself in the position where you've got this long criminal history with a poor track record on efforts to rehabilitate you. And so because of that, you are not a good candidate for probation of any form.

Based upon these findings, the trial court ordered the defendant to serve his six-year sentence in confinement.

After the defendant stated that he had rejected the State's offer of three years to serve in favor of the opportunity to apply for probation and insisted that he should not be sentenced to six years to serve, the court told the defendant, "Had you not picked up new criminal offenses and shown up for court when you were supposed to, there's a chance that [you] could have gotten probation. So, I mean, you gambled and you lost."

In this timely appeal, the defendant contends that the trial court erred by imposing a fully incarcerative sentence. The State asserts that the record supports the denial of alternative sentencing.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our

-3-

Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Although the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence, *see* T.C.A. § 40-35-103(5), "[c]onvicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" are not considered favorable candidates for alternative sentencing, *id.* § 40-35-102(5)-(6)(A).

That being said, the imposition of an effective six-year sentence in this case mandated the trial court's considering probation as a sentencing option. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less . . . ."). Traditionally, the defendant has borne the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "subserve the ends of justice and the best interest[s] of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

In our view, the trial court did not abuse its discretion by ordering a sentence of full confinement in this case. The record indicates that the defendant had a long criminal history littered with violent offenses and revocations of both probation and parole. Additionally, the defendant was placed on bond pending the sentencing hearing in this case but nevertheless failed to appear for the original setting of the sentencing hearing. Although the trial court did not express its finding in the words used by the statute, the record clearly supports the trial court's implicit finding that measures less restrictive than confinement had frequently and recently been applied unsuccessfully to the defendant.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE